26CA0591 Peo in Interest of Keene 07-30-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 26CA0591
Pueblo County District Court No. 26MH30035
Honorable Gregory J. Styduhar, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Andrew Michael Keene,

Respondent-Appellant.

---

ORDER AFFIRMED

Division V
Opinion by JUDGE SCHUTZ
Lipinsky and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 30, 2026

---

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County Attorney, Pueblo, Colorado, for Plaintiff-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1    Andrew Michael Keene appeals the district court's order authorizing staff at the Colorado Mental Health Hospital in Pueblo (the hospital) to medicate him without his consent.  We affirm.

## I.    Background

¶ 2    Keene was admitted to the hospital in December 2025 after he was found incompetent to proceed in two criminal cases.[1]  His symptoms, which he experienced intermittently for decades, involved fluctuations between, on the one hand, depression, low mood, and low energy, and on the other hand, mania with psychotic symptoms, persecutory delusions, and aggressive behavior.  He was diagnosed with type I bipolar disorder.  Due to his worsening manic and psychotic symptoms and aggressive behavior, including an

---

[1] Keene was initially admitted to the hospital to restore his competency so he could stand trial in the criminal proceedings.  A petition to administer involuntary medications to restore a defendant to competency is typically governed by *Sell v. United States*, 539 U.S. 166, 180-81 (2003).  But Keene's mental condition deteriorated while he was at the hospital.  Thus, the petition's stated purposes, and the district court's bases for granting the petition, were (1) to prevent a significant and long-term deterioration in Keene's mental condition and (2) to prevent the likelihood of him causing serious harm to himself or others.  A petition to administer involuntary medication to a patient in these circumstances triggers the test set forth in *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985).  We therefore apply the *Medina* framework to the parties' contentions.

1

incident in which he was verbally aggressive and physically postured toward staff members, he was started on emergency medications.

¶ 3     The People petitioned the district court for authorization to involuntarily medicate Keene with the antipsychotic medication olanzapine (Zyprexa) and the mood-stabilizing medication lithium (jointly, the requested medications).

¶ 4     Keene and his psychiatrist, Dr. Zachary Wickline, both testified at the hearing on the petition. Wickline described Keene's type I bipolar disorder as "severe" and a substantial disorder of the cognitive, volitional, or emotion process that grossly impairs judgment or capacity to recognize reality or to control behavior." Wickline proceeded to opine as follows:

- Keene has "little insight" into his mental illness because, although he agrees that he has post-traumatic stress disorder (PTSD), he does not believe he has bipolar disorder.

- The requested medications are necessary to prevent both a significant and likely long-term deterioration in his

bipolar disorder and the likelihood of him causing serious harm to others in the hospital.

- There isn't an alternative method of treating him that would be both effective and less intrusive than the requested medications because type I bipolar disorder can only be effectively treated with medications.

- The failure to medicate Keene would be more harmful than any risks posed by the requested medications.

¶ 5    Keene testified that he does not have a mental illness, including bipolar disorder, but said that he does suffer from PTSD and depression.  He testified that he does not need any antipsychotic or mood-stabilizing medications, but that Ativan (an anti-anxiety medication) and melatonin (a sleep aid) have helped him sleep.  He also testified about the side effects he said he experienced from the requested medications.  He further clarified that, although he doesn't like psychiatry because "it doesn't tend to involve any kind of psychological therapy," he is "very much in favor of" psychological treatment, such as trauma-informed care and dialectical behavior therapy.

¶ 6     Following Keene's testimony, the district court credited Wickline's testimony; examined each of the four elements of the test from People v. Medina, 705 P.2d 961, 973 (Colo. 1985); concluded that the People had met their burden of proving all four elements; and granted the petition.

## II.     Applicable Law and Standard of Review

¶ 7     The parties agree that the Medina test applies.  Under that test, a district court may authorize the involuntary administration of medication if the People demonstrate by clear and convincing evidence that

> (1) the patient is incompetent to effectively participate in the treatment decision;
>
> (2) the treatment with medication is necessary to prevent a significant and likely long-term deterioration in the patient's mental health condition or to prevent the likelihood of the patient causing serious harm to himself or others in the institution;
>
> (3) a less intrusive treatment alternative is not available; and
>
> (4) the patient's need for treatment with medication is sufficiently compelling to override any bona fide and legitimate interest he has in refusing treatment.

*Id.*

4

¶ 8    Application of the Medina test involves mixed questions of fact and law.  People v. Marquardt, 2016 CO 4, ¶ 8.  We defer to the district court's factual findings if they have record support, while we review the court's legal conclusions de novo.  Id.  Resolving conflicts in testimony and determining the credibility of the witnesses are matters solely within the province of the district court.  People in Interest of Ramsey, 2023 COA 95, ¶ 23.

### III.    Analysis

¶ 9    Keene contends that the evidence was insufficient to establish any of the four Medina elements by clear and convincing evidence. We disagree.

¶ 10    On a sufficiency challenge, we must determine whether the evidence, viewed as a whole and in the light most favorable to the People, is sufficient to support the district court's order.  People in Interest of R.K.L., 2016 COA 84, ¶ 13.  The testimony of the physician seeking to administer treatment may be sufficient, without more, to satisfy the Medina test.  Id. at ¶ 30.

#### A.    The First *Medina* Element

¶ 11    To show that the patient is incompetent to effectively participate in a treatment decision, the People must establish that

"the patient's mental illness has so impaired his judgment as to render him 'incapable of participating in decisions affecting his health.'" Medina, 705 P.2d at 973 (quoting Goedecke v. State, 603 P.2d 123, 125 (Colo. 1979)). But "[i]f the patient is competent to participate in the treatment decision, then the patient's refusal to submit to the proposed treatment must be respected out of the law's regard for a person's right to make decisions on matters affecting his own bodily integrity." Id.

¶ 12    In finding that Keene is incompetent to effectively participate in the treatment decision, the district court credited Dr. Wickline's opinion that Keene has type I bipolar disorder, while emphasizing that Keene does not believe he has a mental illness (other than PTSD and depression). Based on that disagreement, the court found that Keene has limited insight into his mental illness because he does not understand "the significance of his diagnosis and the need for medications." Therefore, the court found, Keene "is incapable of making informed treatment decisions."

¶ 13    Those findings are supported by Dr. Wickline's testimony that Keene has "severe" type I bipolar disorder. Wickline opined that Keene's "lack of insight [into his mental illness] is the crucial piece"

6

supporting Wickline's opinion that Keene is incompetent to effectively participate in deciding whether psychiatric medications are needed. As Wickline explained, Keene's "detachment from reality" makes him unable to understand his mental illness and his need for the requested medications. (Id. at pp. 7-8) See R.K.L., ¶¶ 6-7, 33 (affirming the finding that the patient was incompetent to effectively participate in the treatment decision because the psychiatrist testified that, while the patient had schizophrenia, the patient did not think he had a mental illness); People in Interest of Strodtman, 293 P.3d 123, 131-32 (Colo. App. 2011) (same).

¶ 14    Although Keene emphasizes that he has "a degree of insight" into his mental illness because he recognizes that he has PTSD and depression and is willing to take Ativan and melatonin, that ignores the fact that he does not believe he has bipolar disorder, which is the "severe" mental illness that requires treatment with the requested medications. Keene also points out that he wants to get psychological therapy without psychiatric medications. But, as Wickline testified, "medication treatment would always be a part of his treatment plan. Certainly therapies could help as well. But I think he does require medications."

¶ 15 Given that the court credited Wickline's testimony, the evidence, viewed as a whole and in the light most favorable to the People, is sufficient to support the district court's finding on the first Medina element. See Ramsey, ¶ 23; R.K.L., ¶¶ 13, 30.

## B. The Second *Medina* Element

¶ 16 In Keene's opening brief, he challenges the district court's finding that the second Medina element was met, but then, in his reply brief, he states that he "does not challenge the [district court's] findings as to this element on appeal." We resolve this inconsistency by assuming that the statement in his reply brief was an oversight, and that he does indeed seek review of all the arguments raised in his opening brief. So, we turn to the district court's finding that the requested medications are necessary to prevent a significant and likely long-term deterioration in Keene's mental condition.

¶ 17 Because we conclude that the evidence was sufficient on that issue, we need not address whether the requested medications were also necessary to prevent the likelihood of him causing serious harm to himself or others in the hospital.

¶ 18    In determining whether medication is necessary to prevent a significant and likely long-term deterioration in a patient's mental condition, a court "should focus on the nature and gravity of the patient's illness, the extent to which the medication is essential to effective treatment, the prognosis without the medication, and whether the failure to medicate will be more harmful to the patient than any risks posed by the medication." Medina, 705 P.2d at 973.

¶ 19    The district court explicitly stated that it was relying on Dr. Wickline's testimony in finding that the requested medications are necessary to prevent a significant and likely long-term deterioration in Keene's mental condition. Wickline explained his reasoning for that opinion by addressing the considerations identified in Medina:

- He characterized Keene's type I bipolar disorder as "severe."

- He testified that "when bipolar disorder has psychotic features [as in Keene's case], the medical consensus is that you use . . . a mood stabilizer and an antipsychotic together." He further explained that (1) lithium "is the gold standard mood stabilizer in people with bipolar disorder" because it "can effectively reduce the symptoms

of mania and in doing so, hopefully reduce the symptoms of psychosis," and (2) olanzapine "more directly treats the psychotic symptoms, so we would hope that the symptoms of hearing voices[,] of disorganized speech and thought[,] and delusional beliefs would be lessened."

- He testified that, without the requested medications, "there would be certainly the continuation of psychotic symptoms" and "the longer and more persistent these symptoms, . . . the more likely there is a long term deterioration and worse[] long term outcomes."

- He explained why the failure to medicate Keene would be more harmful than any risks posed by the requested medications.

¶ 20 In challenging the district court's finding on this element, Keene highlights Wickline's testimony on cross-examination that delusional beliefs are "often the most treatment resistant" and may not fully resolve with pharmacological intervention, and that when Keene has taken medication in the past, "[s]ome of [his] delusional beliefs were maintained." However, Wickline proceeded to testify that "it is possible that his delusional beliefs could resolve," but

given that he has experienced bipolar disorder for decades, "that aspect of the illness" may not "fully resolve." He also testified that, even if Keene's delusional beliefs do not fully resolve, Keene's "emotional reactions around those delusional beliefs can be lessened" and "he will perhaps be less perseverative and fixated on those beliefs."

¶ 21 Regardless of whether Keene's delusional beliefs could fully resolve from treatment with the requested medications, the important point is that Dr. Wickline's testimony supported a conclusion that the requested medications would help Keene improve rather than deteriorate.

### C. The Third *Medina* Element

¶ 22 Similar to his contention regarding the second *Medina* element, Keene's opening brief presents arguments challenging the district court's finding that the third *Medina* element was met, but then in his reply brief, he states that he "does not challenge the [district court's] findings as to this element on appeal." Here too, we will assume that Keene seeks review of the arguments he raises in his opening brief.

¶ 23    For purposes of this *Medina* element, "a 'less intrusive

alternative' constitutes an available treatment that has less harmful

side effects and is at least as effective at alleviating a patient's

condition as the proposed treatment."  *Strodtman*, 293 P.3d at 133

(quoting *Medina*, 705 P.2d at 974).  In evaluating this element, "the

focus encompasses not only the gravity of any harmful effects from

the proposed treatment but also the existence, feasibility, and

efficacy of alternative methods of treating the patient's condition."

*Medina*, 705 P.2d at 974.

¶ 24    The district court found that there was no less intrusive

alternative to administration of the requested medications,

explaining how lithium and olanzapine work to treat type I bipolar

disorder.  That finding is supported by Wickline's testimony that (1)

"when bipolar disorder has psychotic features [as in Keene's case],

the medical consensus is that you use . . . a mood stabilizer and an

antipsychotic together"; and (2) although "therapies could help as

well," Keene "does require medications."

¶ 25    Keene asserts that "Dr. Wickline testified that [l]ithium alone

could be sufficient to address [his] symptoms."  We are

unpersuaded because, although Wickline testified it was "possible"

12

that lithium alone could treat Keene's symptoms, he continued by testifying that, "given the degree of impairment owed to the psychotic symptoms specifically, I do think that targeting them directly with an antipsychotic is indicated." And although Ativan and melatonin helped Keene with insomnia, those medications are not the antipsychotics or mood stabilizers needed to treat his bipolar disorder. And regarding Keene's desire to be treated with psychological treatment, rather than with psychiatric medications, Wickline conceded that "therapies could help as well." But he did not waver from his opinion that Keene "does require medications."

### D.    The Fourth *Medina* Element

¶ 26    In analyzing the fourth *Medina* element, a court first determines "whether the patient's refusal [of treatment] is bona fide and legitimate." *Medina*, 705 P.2d at 974. If it is, the court then determines "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Id.*

¶ 27   The district court noted Keene's testimony about the numerous side effects he said he experienced from the requested medications but then credited Wickline's testimony that Keene tolerated the requested medications well when he took them on an emergency basis.  So, the court found, Keene's reported side effects were "not necessarily" bona fide and legitimate.  But the court also found that, even if Keene's complaints about side effects were bona fide and legitimate, his prognosis if he did not take the requested medications would be so unfavorable that his interests in avoiding side effects must yield to the "legitimate interests of the state in preserving the life and health of the patient who [was] placed in its charge and protecting the safety of those in the institution."

¶ 28   Before discussing the issue of side effects, we first note that Keene identifies on appeal another interest in refusing the requested medications, namely, that testing has revealed that he has decreased blood counts, which could indicate a broad range of serious underlying conditions.  However, Keene did not testify on this issue, and Wickline noted that (1) Keene refused to see a hematologist regarding the low blood counts; (2) he hoped that Keene would be more willing to see a hematologist as his psychotic

14

symptoms and mood improve on the requested medications; and (3) "a wide range of things" could cause the low blood counts. So, there is little to no reason to think that the requested medications played any role in Keene's low blood counts, particularly given that he had low blood counts when he was admitted to the hospital.

¶ 29 In addition, Keene asserts that he experienced "debilitating" side effects from the requested medications, including cognitive decline, physical pain, physical impairment, dry mouth, tremors, dizziness, restlessness, sedation, and depression. He also testified that he experienced negative reactions to similar medications in the past. Finally, he emphasizes the potential side effects of the requested medications, as Wickline testified.

¶ 30 In light of Wickline's testimony that he observed only that Keene was "a little bit slower," was "a little bit more tired," and had "a little bit depressed mood stage" when he took the requested medications on an emergency basis, we acknowledge the district court's skepticism as to whether Keene's list of endorsed side effects was bona fide and legitimate. However, like the district court, we will assume, without deciding, that his interest in avoiding side effects is bona fide and legitimate.

¶ 31    The question then turns to whether Keene's need for treatment with the requested medications is sufficiently compelling to override his interest in avoiding their side effects.  On appeal, Keene does not specifically address this issue but, having challenged the second *Medina* element regarding whether the requested medications are necessary to prevent a significant and likely long-term deterioration in his condition, he implicitly did.

¶ 32    Given our analysis of the second *Medina* element in Part III.B above, we discern no error in the district court's assessment of the fourth *Medina* element.  When viewed as a whole and in the light most favorable to the People, Wickline's unequivocal testimony regarding the reasons why the court should order the involuntary administration of the requested medications establishes that Keene's compelling need for treatment outweighs his interest in avoiding side effects.  *Ramsey*, ¶ 23; *R.K.L.*, ¶¶ 13, 30.  Recall that Wickline testified that Keene's type I bipolar disorder, which he has had for decades, is severe; an antipsychotic medication and a mood-stabilizing medication are necessary to effectively treat the condition; and without the requested medications, he would experience a significant and likely long-term deterioration in the

16

condition.  Further, Wickline specifically opined that not treating Keene with the requested medications would be more harmful than their risks.

## IV.  Disposition

¶ 33    The order is affirmed.

JUDGE LIPINSKY and JUDGE YUN concur.